UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Vouchera LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. |
| | ) | |
| Frontier Payments LLC and Vantiv Inc. | ) | |
| | ) | |
| Defendants | ) | |

## COMPLANT

Plaintiff, Vouchera LLC d/b/a Voucher ATM LLC, by and through its attorney at Elan Law Group, for its Complaint against the Defendants, Frontier Payments LLC d/b/a Charge Pass and Vantiv Inc. (collectively, the "Defendants") states as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the case is between citizens of different states, as set forth below, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

2.  The Plaintiff, Vouchera LLC d/b/a Voucher ATM LLC ("VATM") is an Illinois limited liability company. VATM has two members. One member of VATM is a irrevocable trust, with a trustee, Steven Juliver, who is domiciled in the state of Arizona. The second member of VATM is Dialie LLC. Dialie LLC has one member, Patrice Berthome, who is a natural person, currently domiciled in the state of Arizona. Thus, VATM is a citizen of Arizona.

1

3. Defendant, Frontier Payments, is a Delaware limited liability company. On information and belief, Frontier Payments has one member, Jason Diaz, who is a natural person domiciled in the state of New York.

4. On information and belief, Defendant Vantiv Inc. ("Vantiv") is a dual citizen of Delaware and Ohio. Vantiv was incorporated in the state of Delaware and has the main place of business in the state of Ohio.

5. Venue is proper in this District, pursuant to an Agreement between VATM and Frontier Payments, an Agreement that is the subject matter of this action.

## FACTS COMMON TO ALL COUNTS

### The Parties

6. VATM is in the business of providing various software to the retail industry, software which includes a so-called "kiosk solution" (the "Kiosk").

7. The Kiosk is utilized by retailers that are unable, or unwilling, to accept credit cards as a form of payment for their merchandise.

8. The retailers' customers use the Kiosk to make a credit card purchase of a voucher, which they can then redeem for the desired merchandise.

9. Vantiv is an acquirer, i.e., a financial institution that processes credit card payments.

10. Frontier Payments is a merchant of record with Vantiv, and is a value-added reseller of the credit card processing services it receives from Vantiv.

11. Prior to 2015, Frontier Payments was reselling credit card processing services to taxicab companies and drivers.

12. In 2015 Frontier Payments sought to expand its services beyond the taxicab industry, as the industry was negatively impacted by the expansion of Uber.

**Agreement between VATM and Frontier Payments**

13.     On or about May 12, 2015, VATM and Frontier Payments executed a written 3-year agreement (the "Agreement").

14.     The purpose of the Agreement was for VATM to become a sub-merchant of Frontier Payments, so that VATM could provide credit card processing as part of the Kiosk solution.

15.     Pursuant to the Agreement, VATM would offer the Kiosk to retail businesses that were unable, or unwilling, to accept credit cards.

16.     After the Agreement was executed, VATM began to offer the Kiosk to retailers, acting through Potential LLC ("Potential").

17.     When a retailer's customer used the Kiosk to purchase a voucher with a credit card, the payment was processed by Frontier Payments and Vantiv.

18.     If the card transaction was approved, Vantiv received the proceeds of the transaction, and transferred the proceeds to Frontier Payments.

19.     Pursuant to the Agreement, Frontier Payments was obligated to transfer the proceeds to VATM within one business day.

20.     Frontier Payments could withhold an agreed upon percentage (referred to as "Revenue Share" in the Agreement) before initiating the transfer. On the 15th day of every month, however, Frontier Payments was obligated to transfer a portion of the Revenue Share to VATM.

21.     When VATM received the proceeds from Frontier Payments, VATM transferred the proceeds to its customers, pursuant to separate agreements with the customers.

22.     Pursuant to those separate agreements, VATM could withhold certain fees from the proceeds before initiating the transfer.

23. Unbeknownst to VATM, shortly after the Agreement was executed, Frontier Payments began to develop a competing Kiosk solution, replicating VATM's technology.

24. On information and belief, Frontier Payments hired a software developer specifically for this purpose.

25. Frontier Payments' undisclosed intent was to eventually compete with VATM.

26. Nonetheless, the parties worked under the Agreement uneventfully until the middle of October, 2016.

27. During this time, VATM was able to acquire a substantial number of customers.

28. By October, 2016, the average daily volume of the Kiosk voucher purchase transactions was approximately $163,000.

**Frontier Payments Resolves to Eliminate VATM as a Competitor by Destroying VATM's Relationship with its Customers and Retaining the Proceeds and VATM's Portion of the Revenue Share**

29. On information and belief, in or about October, 2016, Frontier Payments' mobile Kiosk solution was completed, and Frontier Payments resolved to eliminate VATM as a competitor and destroy VATM's relationship with its customers.

30. To that end, on or about October 17, 2016, Frontier Payments contacted VATM, stating that Frontier Payments was undergoing an investigation by Vantiv, and that all card transaction proceeds were frozen and were in the possession of Vantiv.

31. Under the Agreement, in the event there was a problem with Vantiv, Frontier Payments was obligated to make best efforts to establish a processing relationship with another processor, so as to minimize any adverse impact on VATM's business.

32. Frontier Payments made no efforts whatsoever to establish a relationship with another processor.

33. If it did experience a problem with Vantiv, Frontier Payments capitalized on it to further damage VATM.

34. Frontier Payments represented that because all the funds were frozen, Frontier Payments could pay neither the proceeds, nor VATM's portion of the Revenue Share.

35. The total amount of the proceeds represented to be frozen was approximately $1,373,000.

36. The total amount of VATM's portion of the Revenue Share was approximately $291,000.

37. After it represented that the funds were frozen, Frontier Payments also demanded the contact information for all VATM's customers.

38. By then, VATM was made aware that Frontier Payments had developed a competing solution, so VATM refused to provide the information.

39. On or about October 19, 2016, Frontier Payments terminated all processing services.

40. It continued to represent to VATM that it was undergoing an investigation, was meeting with investigators and was working diligently to resolve the situation with the frozen funds.

41. VATM and Potential informed the customers who were awaiting the receipt of proceeds accordingly.

42. In the meantime, unbeknownst to VATM, Frontier Payments began to contact VATM's customers, representing that VATM and Potential were, somehow, responsible for non-payment of proceeds, and that Frontier Payments was able and willing to pay the proceeds directly to the customers.

43. On information and belief, Frontier Payment's intent was to discredit both VATM and Potential, and to retain all the fees (in the amount of $165,000) that VATM would have withheld from the proceeds, had it received the proceeds from Frontier Payments.

44. Further, Frontier Payment's intent was to deprive VATM's of its portion of the Revenue Share.

45. When it contacted VATM's customers, Frontier Payments made other misrepresentations.

46. Specifically, Frontier Payments represented to some customers that it had no knowledge that some customers of VATM were cannabis dispensaries, and that VATM defrauded Frontier Payments by concealing this fact.

47. The representation was false.

48. As a result of the misrepresentations, VATM's customers began to accuse Potential and VATM of fraud and dishonesty.

49. Many customers expressed that "the trust" had been broken, and that they would have no further business dealings with VATM.

50. On or about October 31, 2016 – a mere two weeks after it terminated its relationship with VATM – Frontier Payments published and began to advertise its own mobile Kiosk solution.

## COUNT I
## BREACH OF CONTRACT
### (Frontier Payments)

51. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50, as if fully set forth herein.

52. The Agreement was valid and enforceable contract.

53. At all times, VATM fully performed its obligations under the Agreement.

54. Frontier Payments breached the Agreement, when it failed to pay the proceeds to VATM.

55. Frontier Payments further breached the Agreement when it failed to pay VATM's portion of the Revenue Share on October 15, 2016 and November 15, 2016.

56. Frontier Payments further breached the Agreement when it terminated services without the notice required under the Agreement.

57. Frontier Payments further breached the Agreement by failing to exercise best efforts to establish a processing relationship with another processor, when it experienced a problem with Vantiv.

58. When it developed a competing Kiosk solution and destroyed the relationship between VATM and its customers, Frontier Payments took advantage of VATM in a way that was not contemplated at the time the Agreement was drafted and destroyed VATM's right to receive the benefit of the Agreement.

59. In doing so, Frontier Payments breached an implied covenant of good faith and fair dealings.

60. As a result of Frontier Payment's aforementioned breaches, VATM suffered damages, consisting of (1) unpaid proceeds in the amount of $1,373,000; (2) unpaid portion of the Revenue Share in the amount of $291,000; (3) damages related to termination of services without notice, required under the Agreement, in the amount of $572,000.

WHEREFORE, Plaintiff, Vouchera LLC, prays that this Court enter a judgment in its favor and against Defendant Frontier Payments LLC in the amount to be determined at trial, together with interest and costs of this action, and any other relief that the Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT, AS AN ALTERNATIVE TO BREACH OF CONTRACT
**(Frontier Payments)**

61. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50, as if fully set forth herein.

62. Frontier Payments has unjustly retained all or a portion of the proceeds, and VATM's portion of the Revenue Share, to the detriment of VATM.

63. Frontier Payment's retention of the funds violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff, Vouchera LLC, prays that this Court enter a judgment in its favor and against Defendant Frontier Payments LLC in the amount to be determined at trial, together with interest and costs of this action, and any other relief that the Court deems just and proper.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
(Frontier Payment)

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50, as if fully set forth herein.

65. A valid business relationship existed between VATM and its customers.

66. Frontier Payments had knowledge of the relationship.

67. Frontier Payments intentionally and maliciously interfered with the business relationship, causing termination of the relationship with many customers.

68. Termination of the relationship resulted in damages to VATM.

WHEREFORE, Plaintiff, Vouchera LLC, prays that this Court enter a judgment in its favor and against Defendant Frontier Payments LLC in the amount to be determined at trial, to include compensatory and punitive damages, as well as attorneys' fees, and interest and costs of this action, and any other relief that the Court deems just and proper.

## COUNT IV
## DEFAMATION

**(Frontier Payments)**

69. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50, as if fully set forth herein.

70. Frontier Payments made false statements about VATM, including that VATM was responsible for failure to pay proceeds to the customers, and that VATM concealed from Frontier Payments that some customers were cannabis dispensaries.

71. Frontier Payments made these false statements to VATM's customers.

72. The statements were defamatory, in that they harmed VATM's reputation.

73. As a result of the false statements VATM suffered damages.

WHEREFORE, Plaintiff, Vouchera LLC, prays that this Court enter a judgment in its favor and against Defendant Frontier Payments LLC in the amount to be determined at trial, to include compensatory and punitive damages, as well as attorneys' fees, and interest and costs of this action, and any other relief that the Court deems just and proper.

## COUNT V
## UNJUST ENRICHMENT
**(Vantiv)**

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50, as if fully set forth herein.

75. On information and belief, Vantiv has unjustly retained all or a portion of the proceeds to the detriment of VATM.

76. Vantiv's retention of the funds violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff, Vouchera LLC, prays that this Court enter a judgment in its favor and against Defendant Vantiv Inc. in the amount of to be determined at trial, together with interest and costs of this action, and any other relief that the Court deems just and proper.

Date:   December 19, 2016					Vouchera LLC

						By: /s/  Svetlana Kaplina
						One of its Attorneys

Svetlana Kaplina ARDC# 6293095
Elan Law Group
73 West Monroe
Chicago, IL 60603
Phone: (312) 772-5672
Fax:    (312) 284-5551